**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES, | |
| Plaintiff, | C.A. No. 2:21-cv-_____ |
| v. | JURY TRIAL DEMANDED |
| TRIVAGO N.V., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies ("Blackbird Technologies") hereby alleges for its Complaint for Patent Infringement against Trivago, N.V., ("Trivago" or "Defendant") on personal knowledge as to its own activities and on information and belief as to all other matters, as follows:

THE PARTIES

1.      Plaintiff Blackbird Technologies is a Delaware limited liability company with its principal place of business located at One Boston Place, Suite 2600, Boston, Massachusetts 02108.

2.      Upon information and belief, Trivago N.V. is a foreign company organized under the laws of Germany, and may be served with process at its place of business under The Hague Convention at Kesselstrasse 5 – 7, 40221 Dusseldorf, Germany. Trivago sells and offers to sell products and provides services throughout the United States, including in this state and in this judicial district, and introduces products and services that perform infringing processes into the stream of commerce knowing that they will be available in this state and this judicial district.

**COMPLAINT FOR PATENT INFRINGEMENT**                                      **Page 1**

JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35, United States Code §§ 100, *et seq*.

4.      Subject-matter jurisdiction over Blackbird Technologies' claims is conferred upon this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (patent jurisdiction).

5.      Venue for Trivago is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because venue in a patent infringement action against a foreign defendant is proper in any judicial district. Moreover, upon information and belief, Trivago has committed substantial acts of infringement in this District. This Court has personal jurisdiction over Trivago because Trivago is subject to general and specific jurisdiction in the state of Texas. Trivago is subject to personal jurisdiction because Trivago has transacted business within Texas and committed acts of patent infringement in Texas. Trivago has made certain minimum contacts with Texas such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice. Trivago regularly conducts business in Texas by offering its accused hotel metasearch engine through its website, www.trivago.com, which is accessible throughout the United States, including Texas, and by promoting hotels located in Texas through its website. For example, as shown below, Trivago promotes hotels located in this District:



**COMPLAINT FOR PATENT INFRINGEMENT**                                        **Page 2**

Trivago inserts the accused products into the stream of commerce, with the knowledge and intention that they be offered and used by Texas residents. Trivago has purposefully availed itself of the privilege of conducting activities within Texas such that it should reasonably anticipate being haled into court here. As alleged herein, acts by Trivago in this District have caused injury to Blackbird Technologies.

<u>U.S. PATENT NO. 8,386,469</u>

6.      U.S. Patent No. 8,386,469 (the "'469 patent" or "patent-in-suit") entitled, "Method and system for determining relevant sources, querying and merging results from multiple content sources," was duly and legally issued by the U.S. Patent and Trademark Office on February 26, 2013. Blackbird Technologies is the owner by assignment of all right, title, and interest in and to the '469 patent, including all right to recover for any and all infringement thereof. The '469 patent is valid and enforceable. A true and correct copy of the '469 patent is attached as Exhibit A.

7.      The claims of the '469 patent are directed to an unconventional search engine architecture that allows for improved search efficiency and maximizes search result relevance. As described in the specification, "[c]ontemporary search engines are designed to pre-index a collection of resources (e.g., document, image, web site), then, in response to a query, examine collections in one or a group of computers for content that satisfies the query and return an ordered list of possible matches to the user as a results set." (Ex. A, at 1:49-54). A result set can be ranked (or scored) based on relevance—*e.g.*, "how closely the content matches the query." (*Id.* at 1:54-56). A "metasearch" engine may combine results from multiple search engines or database indexes, and a "federated" search may combine results from more than one search. (*Id.* at 2:4-19). As further explained in the specification, "[f]or a metasearch or federated search to be maximally precise, it should find the resources that score the highest with respect to the metacollection, not

necessarily those that score the highest with respect to the individual collections in which they reside." (*Id* 2:20-24). More, "[t]he changing nature of content access," such as searching via mobile phone, "plays a large part in increasing the value of information retrieval precision" and providing "the shortest path to [a user's] desired content." (*Id*. at 2:46-51). The specification describes other challenges to federated search functionality, including directly comparing local ranking statistics when combining results sets, de-duplicating content, and handling wide variations in both response characteristics (*e.g.*, latency, uptime) and relevance of content collection. (*Id*. at 2:55-3:13). The '469 patent addresses these challenges by providing a "method and system for an improved federated or metasearch engine which categorizes the query and query context to choose the most relevant source(s) from the set of multiple, distributed, heterogenous content sources to generate a combined search results set, ordered using source, user, distributor ratings and/or other factors with minimum latency to the user."  (*Id*. at 8:12-13).

8.     The claimed invention improves the functioning, structure, and searching of traditional metasearch and federated search engines by claiming an unconventional technological solution. In particular, the claimed invention achieves improved search engine efficiency by dynamically categorizing a query to automatically identify via a taxonomy multiple content sources, formatting the query to the query language of the different content sources, and merging the results of the query based on local ranking statistics and other factors, including a source ranking based on response latency. (*See, e.g.,* Claims 1 and 31). The specification describes how the claimed solution improves traditional search engine functionality:

> By dynamically computing a set of sources relevant to the user's information request at the time a query is presented, an embodiment of the present invention maximizes precision for the query. In addition, the amount of data transmitted over the network may be minimized over other federated search technologies, thereby providing efficient bandwidth utilization. Furthermore, topology of the federated search source selection mechanism readily supports a multi-tier hierarchy of search

**COMPLAINT FOR PATENT INFRINGEMENT**                                          **Page 4**

> engines and metasearch engines, thereby facilitating the scalability of the search
> system to any number of content collections, search engines and/or other sources
> of data.

(*Id*. at 11:12-22). By automatically reducing the universe of content to be searched at the time of the query, and then merging the search results based on specific ranking statistics from each content source and other factors, such as relevance or other source rankings (uptime or speed of response), the claimed invention improves the functioning of traditional search engine architecture by "returning search results in a manner that maximizes results relevance while minimizing user perceived latency and platform resources, including consumed memory, processing, and network requirements." (Ex. A, '469 patent, at 4:67-5:3).  The claimed invention further maximizes search efficiency by formatting a user's query to content specific source language so that a user only has to enter a single query to search multiple content sources, and formatting the results set so that they are efficiently delivered to a particular user device.

9.      The claims of the '469 patent achieve a technological solution to technical challenges that exist with conventional metasearch engines and federated searches. As described in the '469 patent, dynamically categorizing a query to select content sources to be searched, formatting the query for each content source, merging the results based on specific factors, and formatting the results for display in the manner claimed in the '469 patent, involves more than the performance of well-understood, routine, or conventional activities.

<u>COUNT I – INFRINGEMENT OF THE '469 PATENT</u>

10.      Blackbird Technologies reasserts and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

11.      Upon information and belief, Trivago hosts, develops, programs, operates, and supports a hotel metasearch engine that searches and aggregates search results from multiple

**COMPLAINT FOR PATENT INFRINGEMENT**                                          **Page 5**

websites or other content sources in response to a user query (the "Trivago Search Engine").

(www.trivago.com/).

12. Trivago describes itself as "a metasearch engine that compares accommodation prices and offers provided to us by many different online booking sites," further explaining that it "compare[s] and display[s] different offers from many booking sites…":

trivago Help Center   >   How trivago Works

## What is trivago?

**We are a metasearch engine that compares accommodation prices and offers provided to us by many different online booking sites.** We compare and display different offers from many booking sites, and they pay us a fee if a user clicks on their specific deal. We are not a party to any booking agreement between you and the site or accommodation you book with. We do not collect any payments for your stay and are not liable for the services offered by the booking site and the accommodation provider.

trivago works with many booking sites worldwide, including online travel agencies, as well as accommodation chains and independent hotels. In total, trivago's sites cover more than 2.5 million hotels and other types of accommodations across approximately 190 countries.

(https://support.trivago.com/hc/en-us/articles/360016002114-What-is-trivago-).   As   Trivago further explains, "[a] hotel metasearch, like trivago, is a price-comparison engine for hotels and other accommodations. It aggregates rates and information from several travel sites to provide the maximum   variety   and   the   best   available   rates   to   the   bookers." https://businessblog.trivago.com/metasearch-basics-for-hoteliers/).

13. Trivago infringes one or more claims of the '469 patent, including at least independent claims 1 and 31, through use of the Trivago Search Engine, as discussed in the following paragraphs of this Complaint.

14. With respect to claim 1, the Trivago Search Engine provides "[a] computer implemented method for processing a query," as recited in claim 1.

**COMPLAINT FOR PATENT INFRINGEMENT**                                     **Page 6**

15.     For example, the Trivago Search Engine is a metasearch engine that allows users to enter a query for a hotel and receive results from various other booking or search sites. In the image below, the Trivago Search Engine allows a user to enter information to run a query based on that information (*e.g.*, a search query for a hotel in Washington D.C. on specific dates):



([https://www.trivago.com/](https://www.trivago.com/)). The Trivago Search Engine processes the query (*e.g.*, for hotels in Washington D.C.) and returns results from multiple search sites for the user:



(*Id.*).

16.     The Trivago Search Engine "receiv[es] a query at a computer implemented search engine from a user device via a network" as recited in claim 1.

**COMPLAINT FOR PATENT INFRINGEMENT**                                      **Page 7**

17.     For example, as shown below, users can access the Trivago Search Engine through a computing device, such as a personal computer, laptop computer or mobile device. Users enter a query and click "Search." The Trivago Search Engine receives the query.



(https://www.trivago.com/).

18.     The Trivago Search Engine "categoriz[es] the query to identify via a taxonomy a plurality of content sources stored in electronic storage, wherein the categorization is dynamically performed, independent of user input, by a module communicatively coupled with the computer implemented search engine" as recited in claim 1.

19.     For example, upon information and belief, the Trivago Search Engine identifies which booking or hotel sites (*i.e.*, content sources) will be searched for a particular query by categorizing the query based on a "Hotel ID" given to each hotel:

2. **Hotel Availability – Price Search Results Page**

When users search for hotels on trivago, they provide specific search criteria such as a destination or point-of-interest, their travel dates, and the desired room occupancy. These search criteria are then passed via the APIs to each of our providers in order to retrieve the available rates for the hotels that match the request. The lowest rates provided for each hotel are then displayed on the trivago search results page.

In order to ensure the best accuracy, the FastConnect API request specifies the exact hotel IDs that pertain to the user's search, based on trivago's initial mapping of the hotel data.

(https://developer.trivago.com/fastconnect/fast-connect-overview.html).   The   Trivago   Search Engine will select which hotels or booking sites to search based in part on whether that hotel is a Trivago partner:

## #1 No partnership with a booking site

As a metasearch website, trivago promotes hotels who are available to be booked online through different travel agents. **The online travel agents (OTAs) are the ones who advertise your rates on trivago**. Accommodations without these partnerships will not be made visible in trivago's hotel price comparison – they can be in trivago's database but they will not appear when users search for them.

In case you already have a partnership but your hotel does not show up in the results, it is important to remember that the **advertisers are not obligated to display all their hotels' inventory**. trivago does its best to show a full catalog **but cannot guarantee a hotel's availability in the search results.**

To increase the chance of your hotel appearing in the trivago search results, it is important to have a partnership with at least one booking site but even **more important to have partnerships with as many OTAs as possible.**

([https://businessblog.trivago.com/3-reasons-your-hotel-does-not-show-up-on-trivago-search-results/](https://businessblog.trivago.com/3-reasons-your-hotel-does-not-show-up-on-trivago-search-results/)).   The dynamic categorization and identification of multiple content sources is further illustrated below:



([https://developer.trivago.com/fastconnect/fast-connect-overview.html](https://developer.trivago.com/fastconnect/fast-connect-overview.html)).   Upon  information  and belief, the categorization of content sources is done via taxonomies that include Hotel IDs.

**COMPLAINT FOR PATENT INFRINGEMENT**                                          **Page 9**

20.     The Trivago Search Engine "format[s] the query to at least one source specific query language based on at least one of the plurality of identified content sources, wherein the formatting is performed, independent of user input, by a module communicatively coupled to the computer implemented search engine" as recited in claim 1.

21.     For example, upon information and belief, the Trivago Search Engine formats the query so a booking site can execute the query and provide results back to the Trivago Search Engine, as highlighted below:



(*Id*.).

22.     The Trivago Search Engine "transmit[s] the formatted query for the at least one of the plurality of content sources to the at least one of the plurality of content sources" as recited in claim 1.

23.     For example, as illustrated above in Paragraphs 18-21, the formatted query is transmitted to the plurality of booking sites, hotel websites, or other content sources.

24.     The Trivago Search Engine "receiv[es] results from the at least one of the plurality of content sources, the results containing one or more local ranking statistics that are dynamically computed at each content source in response to the formatted query, the one or more local ranking

statistics related to one or more terms associated with the formatted query and to metadata in a query context" as recited in claim 1.

25.     For example, the Trivago Search Engine receives results from multiple booking sites based on a user query for hotels in Washington D.C.:



For each hotel, the Trivago Search Engine receives results from multiple booking sites, as illustrated below:



Further, the results received from the query contain "one or more local ranking statistics that are dynamically computed at each content source in response to the formatted query." For example, upon information and belief, the search results received from each content source are ranked by that content source. The local ranking statistics also would be related to the query as that information in a result set would only be relevant to whatever was queried. Further, Trivago explains that the content sources choose which hotels to display since they "are not obligated to display all their hotels' inventory," and recommending that "it is important to have a partnership with at least one booking site but even more important to have partnerships with as many [booking sites] as possible." (https://businessblog.trivago.com/3-reasons-your-hotel-does-not-show-up-on-trivago-search-results/). In addition, the Trivago Search Engine receives local ranking statistics based on user reviews and rankings collected from the content source:

## How does trivago determine its guest ratings?

We scan many available guest review and rating sources across the web on a daily basis. **We aggregate these reviews and ratings, and convert them using our Rating Index®** that ranges from 0 to 10 (10 is the highest possible rating). You can find more details in relation to accommodation-specific ratings by clicking on the accommodation's guest rating score.

(https://support.trivago.com/hc/en-us/articles/360016000934-How-does-trivago-determine-its-guest-ratings-); (*see also* https://company.trivago.com/trivago-rating-index/). The ratings are displayed on a search result page:



26.     The Trivago Search Engine "merg[es] the results from the at least one of the plurality of content sources based at least in part on one or more factors and the one or more local ranking statistics, wherein merging the results based at least in part on one or more factors includes merging based on a source rating comprising a response latency" as recited in claim 1.

27.      For example, the Trivago Search Engine aggregates (*i.e.*, merges) the results from the various booking sites:

### Hotel industry terms: the online distribution landscape

Who are the key players and how do they operate?

**Metasearch**

A hotel metasearch like trivago aggregates online content and hotel rates from hundreds of booking sites across the Internet and presents travelers with an unbiased, comprehensive list of hotel deals to choose from, all of which fit their ideal-hotel criteria.

(https://businessblog.trivago.com/hotel-industry-terms-online-distribution/).   Upon   information and belief, the Trivago Search Engine merges the results based on one or more factors. For example, the default ranking or order of results for a query is "Our recommendations":



Trivago describes the "relevant factors" that are used to sort the results under "Our recommendations":

## How does trivago determine the "our recommendations" sort?

**The "our recommendations" feature is based on a dynamic algorithm that shows you a range of attractive and relevant offers we think you're going to love.** We display in green a "recommended deal" which our algorithm recommends as a great offer. Our algorithm takes into account a number of relevant factors, such as your search criteria (for example your location and stay dates), the offer's price, its general attractiveness and the accuracy of the rates provided to us by the booking sites. We also take into account the fee booking sites provide us with when a user clicks on an offer. We require booking sites to meet a de minimis fee requirement for any particular offer to be listed on our site.

**Below to the "recommended deal", we display additional offers to allow you to compare other deals for the same accommodation.** You may find a lower price offer below the recommended deal that is displayed as "our lowest price". While price is an important factor when selecting our "recommended deal", we believe other factors, such as those mentioned above, make offers attractive and relevant to you and contribute to high levels of satisfaction by our users.

Ultimately, our mission is to give you the information and tools to help you find your ideal accommodation.

(https://support.trivago.com/hc/en-us/articles/360016108153-How-does-trivago-determine-the-our-recommendations-sort-). Upon further information and belief, the Trivago Search Engine also utilizes the order or ranking of results received from each content source to merge results. (*See* Paragraph 25). Upon further information and belief, the Trivago Search Engine merges results "based on a source rating comprising a response latency." For example, Trivago highlights the importance of the source websites' speed and load times:

## Time is money

Reduce your loading times. **If your website doesn't load quickly, visitors will lose interest.** They want to be able to navigate and use your website as smoothly and speedily as possible. The good news is that you can fix this unwanted outcome with a simple technical solution.

(https://businessblog.trivago.com/10-ways-hotel-managers-can-get-serious-ux/).   Trivago   also provides guidance on how hotels can optimize their websites for search engines:

**COMPLAINT FOR PATENT INFRINGEMENT**                                              **Page 15**

**On-site SEO for hotel websites**

On-site (or on-page) SEO refers to all the tactics you apply to your website itself that will optimize it for search engines. I'm sure you've heard enough about keywords, so I won't focus on that. Mostly because there are many other on-site factors besides having a good keyword that affect your hotel website ranking in search results.

So how else can you apply on-site SEO to your website? By making sure that your hotel website is built according to search engine guidelines. The algorithms, rules, and factors that affect result-ranking might be dynamic, but there are some basics that remain constant, and you can use them to your advantage.

**Make sure to do the following:**

1. Build your website with a responsive web design (RWD). Keep in mind that RWD is not the same as mobile-friendly; stick with the former.
2. Your URLs and Title Tags should be short and exact. The shorter and more precise the URL, the better your chance for more traffic. The better your choice of words for your Title Tags, the higher your ranking.
3. Reduce your website's bounce rate by improving your visuals. The more professional your visuals (images, videos, etc.), the more likely you are to attract visitors' attention, and the longer they'll stay on the page.
4. Add links. Both internal links (that direct the visitor to a sub-page within your website) and external links (that direct the visitor to a relevant website) will boost your search engine presence.
5. Since search engines can't "read" images for relevance, give your image file a descriptive name (when you save it for use on your page) and to add similarly descriptive wording to the Alt Text. This is how you convince the engines that your visual content is relevant.

Of course, these are just a few of the on-site best practices you can employ to boost your hotel website search-engine ranking and increase your conversions, but the message you should take from this is that SEO success starts with having the right website.

(https://businessblog.trivago.com/seo-best-practices-hotels/).

28.    The Trivago Search Engine "format[s] the results for delivery to the user device over the network" as recited in claim 1.

29.    For example, as illustrated below, the Trivago Search Engine can format the results for delivery on a user device such as a laptop computer or mobile phone:

<u>Web Browser for Personal Computer</u>:



<u>Web Browser on Mobile Device</u>:



30.     With respect to claim 31, the Trivago Search Engine is "[a] computer implemented system for processing a query," as recited in claim 31. (*See* Paragraph 15).

31.     The Trivago Search Engine includes "a receiving module, of a computer implemented search engine, to receive a query from a user device over a network, wherein the computer implemented search engine enables processing of the query independently of the state of the user device" as recited in claim 31. (*See* Paragraph 17).

32.     The Trivago Search Engine includes "a categorizing module, communicatively coupled with the computerized search engine, to dynamically categorize the query, independent of user input, to identify via a taxonomy a plurality of content sources stored in electronic storage" as recited in claim 31. (*See* Paragraph 19).

33.     The Trivago Search Engine "a formatting module to format the query to at least one source specific query language based on at least one of the plurality of identified content sources, wherein the formatting is performed, independent of user input, by a module communicatively coupled to the computer implemented search engine" as recited in claim 31. (*See* Paragraph 21).

34.     The Trivago Search Engine includes "a transmitting module to transmit the formatted query for the at least one of the plurality of content sources to the at least one of the plurality of content sources" as recited in claim 31. (*See* Paragraphs 19, 21, 23, 32, 33).

35.     The Trivago Search Engine includes "a results processor to receive results from the at least one of the plurality of content sources, the results containing one or more local ranking statistics that are dynamically computed at each content source in response to the formatted query, the one or more local ranking statistics related to one or more terms associated with the formatted query and to metadata in a query context" as recited in claim 31. (*See* Paragraph 25).

**COMPLAINT FOR PATENT INFRINGEMENT**                                    **Page 18**

36.    The Trivago Search Engine includes "a merging module to merge results in response to the formatted query from the at least one of the plurality of content sources based at least in part on one or more factors and the one or more local ranking statistics, wherein merging the results based at least in part on one or more factors includes merging based on a source rating comprising a response latency" as recited in claim 31. (*See* Paragraph 27).

37.    The Trivago Search Engine includes "a results module to format the results for delivery to the user device over the network," as recited in claim 31. (*See* Paragraph 29).

### *Direct Infringement of the '469 Patent*

38.    Trivago, pursuant to 35 U.S.C. § 271(a), has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '469 patent, including at least claims 1 and 31, by making, using, offering to sell, and selling, in this judicial district and/or elsewhere in the United States, the Trivago Search Engine. For example, Trivago controls the Trivago Search Engine as a whole by hosting, running, operating, and/or supporting its software. Trivago makes the Trivago Search Engine by hosting its metasearch engine, or otherwise making its metasearch engine available to customers.

### *Induced Infringement of the '469 Patent*

39.    At least as early as June 17, 2021, Trivago, pursuant to 35 U.S.C. § 271(b), knowingly and intentionally actively induces the infringement of one or more claims of the '469 patent, including at least claims 1 and 31, by instructing and otherwise encouraging infringement and by making the Trivago Search Engine available to users. Trivago provides instructional and other promotional materials demonstrating how the Trivago Search Engine functions. (*See*, *e.g.*, "How Trivago Works", https://support.trivago.com/hc/en-us/sections/360000014707-How-trivago-Works)

**COMPLAINT FOR PATENT INFRINGEMENT**                                              **Page 19**

40.     Trivago has had knowledge of the '469 patent at least as early as June 17, 2021 via a letter notice of infringement sent by Blackbird Technologies. (*See* Ex. B).

41.     A user of the Trivago Search Engine, pursuant to 35 U.S.C. § 271(a), directly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '469 patent, including at least claim 1, by using the Trivago Search Engine in a manner as claimed.

***Contributory Infringement of the '469 Patent***

42.     At least as early as June 17, 2021, Trivago, pursuant to 35 U.S.C. § 271(c), contributes to the infringement of one or more claims of the '469 patent, including at least claims 1 and 31, by, for example, individual users who access the Trivago Search Engine and run queries through the web browsers or applications on their personal computing devices. Individuals who access the Trivago Search Engine and run queries through the web browsers or applications on their personal computing devices directly infringe at least claims 1 and 31 of the '469 patent.  Trivago therefore knows that the Trivago Search Engine, which Trivago provides to individual users for use on their personal computing devices, is designed for combination with those devices, and that this combination is both patented and infringing.

43.     Trivago has had knowledge of the '469 patent at least as early as June 17, 2021 via a letter notice of infringement sent by Blackbird Technologies. (See Ex. B).

44.     The Trivago Search Engine has no substantial non-infringing uses. The Trivago Search Engine is a material part of the invention. For example, claim 31 of the '469 patent requires specific metasearch engine modules that are required for the Trivago Search Engine to function.  The computer program (*i.e.*, the Trivago Search Engine) is a material part of the invention as basic functions such as "transmitting" a query and "receiving" a result is the only potential part of the invention not provided by Trivago.

**COMPLAINT FOR PATENT INFRINGEMENT**                                           **Page 20**

*Willful Infringement of the '469 Patent*

45.     Trivago's infringement has been willful or otherwise egregious.  Trivago became aware of the '469 patent at least as early June 17, 2021, the date it received a letter notice of infringement from Blackbird Technologies. Despite its knowledge of the '469 patent, Trivago continued to make and use the Trivago Search Engine in a manner that infringed the '469 patent. Trivago knew or should have known that its actions constituted an unjustifiably high risk of infringement of the '469 patent.

DAMAGES

46.     Blackbird Technologies has sustained damages as a direct and proximate result of Trivago's infringement of the '469 patent.

47.     As a consequence of Trivago's past infringement of the '469 patent, Blackbird Technologies is entitled to the recovery of past damages in the form of, at a minimum, a reasonable royalty.

48.     As a consequence of Trivago's continued and future infringement of the '469 patent, Blackbird Technologies is entitled to royalties for its infringement of the '469 patent on a going-forward basis.

49.     As a consequence of Trivago's willful or otherwise egregious infringement of the '469 patent, Blackbird Technologies is entitled to treble damages pursuant to 35 U.S.C. § 284.

PRAYER FOR RELIEF

WHEREFORE, Blackbird Technologies respectfully requests that this Court enter judgment against Defendant, as follows:

A.      Adjudging that Defendant has directly and/or indirectly infringed at least claim 1 of the '469 patent literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a)-(c);

B.      An award of damages to be paid by Defendant adequate to compensate Blackbird Technologies for Defendant's past infringement and any continuing or future infringement up until the date such judgment is entered, and in no event less than a reasonable royalty, including interest, costs, and disbursements pursuant to 35 U.S.C. § 284 and, if necessary to adequately compensate Blackbird Technologies for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

C.      Awarding Blackbird Technologies all damages, including treble damages, based on any infringement found to be willful or otherwise egregious, pursuant to 35 U.S.C. § 284;

D.      Ordering Defendant to continue to pay royalties to Blackbird Technologies for infringement of the '469 patent on a going-forward basis;

E.      Adjudging that this case be exceptional under 35 U.S.C. § 285 and awarding enhanced damages, including costs and attorneys' fees, to Blackbird Technologies;

F.      Awarding Blackbird Technologies pre-judgment and post-judgment interest at the maximum rate permitted by law on its damages; and

G.      Granting Blackbird Technologies such further relief as this Court deems just and proper under the circumstances.

<u>DEMAND FOR JURY TRIAL</u>

Blackbird Technologies demands a trial by jury on all claims and issues so triable.

**COMPLAINT FOR PATENT INFRINGEMENT**                                    **Page 22**

Dated:  September 7, 2021                    BUETHER JOE & COUNSELORS, LLC

                                            */s/ Christopher M. Joe*
                                            Christopher M. Joe
                                            Chris.Joe@BJCIPLaw.com
                                            BUETHER JOE & COUNSELORS, LLC
                                            1700 Pacific - Suite 4750
                                            Dallas, TX 75201
                                            (214) 466-1272

                                            VERLANDER LLP
                                            Wendy Verlander
                                            *(Pro Hac Vice Motions to be Filed*)
                                            wverlander@verlanderllp.com
                                            VERLANDER LLP
                                            200 Baker Avenue, Suite 303
                                            Concord, MA 01742
                                            (617) 307-7100

                                            Jeffrey Ahdoot
                                            *(Pro Hac Vice Motions to be Filed)*
                                            jahdoot@verlanderllp.com
                                            VERLANDER LLP
                                            600 14th Street NW, 5th Floor
                                            Washington, DC 20005
                                            (202) 800-5771

                                            *Attorneys for Plaintiff*
                                            *Blackbird Tech LLC*
                                            *d/b/a Blackbird Technologies*